**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1471-15T3
              A-4030-15T4

RENSSELAER CONSTRUCTION CO.,
INC.,

    Plaintiff-Respondent,

v.

NEW VISIONS COMMUNITY
DEVELOPMENT CORPORATION,
CORNELIUS MARTIN, and
VERSEY MARTIN,

    Defendants-Appellants.

_____

Submitted July 25, 2017 — Decided June 11, 2018

Before Judges Ostrer and Leone.

On appeal from Superior Court of New Jersey,
Law Division, Warren County, Docket No.
L-0322-07.

Hunt, Hamlin & Ridley, attorneys for
appellants (Raymond L. Hamlin, on the briefs).

Maher & Maher, LLC, attorneys for respondent
(Gary L. Maher, on the briefs).

The opinion of the court was delivered by

LEONE, J.A.D.

Defendants New Visions Community Development Corporation (New Visions), its chairman Cornelius Martin, and its president Versey Martin appeal the trial court's November 4, 2015 order releasing $81,486.92 to plaintiff Rensselaer Construction Co., Inc. Separately, defendants appeal the April 7, 2016 denial of their motion for reconsideration of an order denying the extension of a stay of the November 4 order. We consolidate the appeals for purposes of this opinion and affirm.

I.

The record before the trial court included the following undisputed facts. In 2002, New Visions and plaintiff entered in a contract for plaintiff to construct New Visions' development in Newark for $4,193,350. A dispute arose regarding the monies owed to plaintiff. In 2007, plaintiff filed a complaint against defendants alleging breach of the construction contract, breach of a 2007 settlement agreement, conspiracy, fraud, and other causes of action.

On January 29, 2008, the trial court ordered that all proceeds from the sale of the remaining unsold properties in the development and all grant funds due to defendants should be paid into the court's trust fund. The order provided that 85% of the proceeds and 75% of the grant funds should be released to plaintiff, with

2                                                                    A-1471-15T3

the rest to be retained "until either the conclusion of the within matter and/or further Order of this Court."

In a January 4, 2010 hearing just before trial, the parties entered into a settlement agreement and memorialized it on the record. Defense counsel David J. Fox stated "the matter has been resolved by and between the parties in the amount of $180,000." Fox stated defendants would "make application to [the court] for withdrawal of some of the funds" in the trust account to make repairs to the last property to be sold in the development, "which [was] presently under contract," would "hopefully . . . get to closing within . . . 45 days," after which the proceeds would be "deposited" into the trust fund and defendant would make "the necessary accounting to the State of New Jersey" for grant funds totaling "approximately $90,000. So that the pool can be set up and then divied up." Fox represented the "goal" was "to have this . . . done within 60 days."

Defendants subsequently filed a motion for the release of $10,100 from the trust fund to complete repairs on the last property. On July 14, 2010, the trial court granted the release to defendants of $10,100 for repairs.[1]

---

[1] Defendants also requested leave to file a third-party complaint against a bank so the bank could "'speak as to the division of escrow funds[,]'" but the trial court denied that request.

Complications arose over the sale of the last property in the development and over the remaining State grant funds, and as a result, the property was not sold as promised. In 2015, $81,483.92 remained in the trust account. Defendants moved for the funds to be released to them, and plaintiff cross-moved for the funds to be released to it, supported by a certification from plaintiff's president, Guillermo L. Cruz.

At the November 4, 2015 hearing, defense counsel argued the January 4, 2010 settlement agreement was unclear as to whether the $180,000 owed included payments made to plaintiff before settlement was reached. The trial court found the "plain language" of the agreement stipulated that New Visions owed plaintiff $180,000 pursuant to the settlement agreement, irrespective of any prior payments or disbursements made, and that the full debt in its entirety remained unpaid. The court's November 4, 2015 order entered a $180,000 judgment in favor of plaintiff, ordered that the $81,486.92 remaining in the trust account be released to plaintiff. Execution of the order was stayed until December 4, 2015, to give defendants an opportunity to appeal.

On December 4, 2015, defendant filed a timely appeal, docketed as A-1471-15. After the stay on the November 4 order expired, plaintiff withdrew the $81,486.92 from the trust fund on December 8, 2015. On December 17, 2015, defendants filed a motion to

reinstate and extend the stay. On February 5, 2016, the trial court without oral argument denied defendants' motion, finding no possibility of irreparable harm and no jurisdiction as the matter was then pending in this court.

On March 9, 2016, defendants filed a motion for reconsideration of the trial court's order denying an extension of the stay. On April 7, 2016 the court denied defendants' motion without oral argument, finding that it lacked jurisdiction and that defendants failed to justify reconsideration. On May 23, 2016, defendants filed a timely appeal, docketed at A-4030-15.

## II.

We first address Appeal No. A-1471-15, defendants' appeal of the November 4, 2015 order, challenging the release of the remaining $81,486.92 in the trust fund to plaintiff. Defendants contend the trial court misinterpreted the settlement agreement.

"A settlement agreement between parties to a lawsuit is a contract." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). "When a trial court's decision turns on its construction of a contract, appellate review of that determination is de novo." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014). "Appellate courts give 'no special deference to the trial court's interpretation and look at the contract with fresh eyes.'" Ibid. (citation omitted). We must hew to that standard of review.

"'[T]he settlement of litigation ranks high in our public policy,'" and we "'strain to give effect to the terms of a settlement wherever possible.'" Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (citations omitted). "Our strong policy of enforcing settlements is based upon 'the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone.'" Ibid. (citation omitted).

Defendants concede that in the January 4, 2010 oral settlement agreement, the parties agreed that "$180,000[] would be paid to plaintiff." However, defendants argue the payments to plaintiff prior to January 4, 2010, must be credited against the $180,000. Defendants refer to payments from the trust account to plaintiff of $108,469.52 in March 2008, and $37,467.39 in June 2008.

Courts "should give contractual terms 'their plain and ordinary meaning,' unless specialized language is used peculiar to a particular trade, profession, or industry." Kieffer v. Best Buy, 205 N.J. 213, 223 (2009) (citations omitted). The plain language of the oral agreement was that defendants still owed plaintiff $180,000. "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn v. Quinn, 225 N.J. 34, 45 (2016).

That plain reading also comports with the circumstances. Plaintiff sued defendants claiming they owed it $407,000. After some payments were made through the trust fund, the parties settled by agreeing defendants still owed plaintiff $180,000. The circumstances confirm that the parties would have stated the amount that had to be paid to plaintiff to settle the case, rather than an amount that once was owed but already had been largely paid.

"It is well-settled that '[c]ourts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract."' A reviewing court must consider contractual language '"in the context of the circumstances' at the time of drafting[.]"'" In re Cty. of Atl., 230 N.J. 237, 254 (2017) (citations omitted).

Defendants' argument has no basis in the settlement agreement, which made no mention of the 2008 payments, let alone deducting them from the $180,000. The only amount the oral settlement agreement provided would be paid or credited to defendants from the trust account was the money for repairs on the last unit to be sold, namely the $10,100 released in July 2010. In interpreting a settlement agreement, courts "will 'not rewrite contracts in order to provide a better bargain than contained in'"

the parties' agreement.  Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 477 (App. Div. 2009) (citation omitted).

Defendants argue the trial court should have held a plenary hearing to determine the material elements of the settlement agreement and to specify the intent of the parties when entering into the 2010 settlement.  However, plaintiff offered no factual basis for a hearing to contravene the plain language of the settlement agreement.  In the certification supporting defendants' motion, New Vision's president/CEO Martin simply stated that "[t]o my knowledge plaintiff has no further claim on the deposited funds."  By contrast, the certification of plaintiff's president Guillermo L. Cruz explained in detail why, after the 2008 payments were made, defendants still owed plaintiff $180,000 as stated in the settlement agreement.  "[A] plenary hearing is only required if there is a genuine, material and legitimate factual dispute." Segal v. Lynch, 211 N.J. 230, 264-65 (2012); cf. Harrington v. Harrington, 281 N.J. Super. 39, 44-45 (App. Div. 1995) (ordering a hearing where no agreement was placed on the record and the parties' certifications showed their "critical disagreement as to the existence of a binding agreement").

Defendants focus on the trial court's statement that it was dealing "with this Settlement Agreement which . . . I'm not going to change.  When . . . lawyers write these agreements, I shouldn't

have to figure out what they meant when they wrote in plain language . . . what is there." Defendants view the court's statement as a critique of the lack of a written agreement, but the statement instead rejected defendants' unsupported attempt to contravene the plain language of the oral agreement.

An "'agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court and even in the absence of a writing.'" Pascarella v. Bruck, 190 N.J. Super. 118, 124 (1983) (citation omitted). The familiar "practice of spreading the terms of the agreement upon the record," though not required, provided sufficient basis for enforcement. Jennings v. Reed, 381 N.J. Super. 217, 229 (App. Div. 2005). "An agreement to settle a lawsuit is a contract, which like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Brundage, 195 N.J. at 601 (quoting Pascarella, 190 N.J. Super. at 124). The trial court properly enforced the parties' settlement agreement that defendants owed plaintiff $180,000 by paying plaintiff the $81,486.92 in the trust account.

## III.

Defendants' December 4, 2015 notice of appeal stated they were appealing only the November 4, 2015 order. Nonetheless,

defendants' brief in that appeal disputes whether the trial court issued its February 5, 2016, and April 7, 2016 orders without hearing oral argument. Any dispute concerning those orders is not properly raised in Appeal No. 1471-15 because it predated, and was not an appeal from, those orders. "[I]t is only the judgment or orders designated in the notice of appeal which are subject to the appeal process and review." 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004).

Even if we were to consider this dispute in defendants' Appeal No. 4030-15 from the April 7 order, we would reject it. Defendants' motion for reconsideration that led to that order did not request oral argument, and they "cannot now complain on appeal about being wrongfully denied something [they] never requested." Tretola v. Tretola, 389 N.J. Super. 15, 20 (App. Div. 2006). Defendants' earlier motion to reinstate and extend the stay stated "oral argument is requested only if this motion is opposed," and it is unclear why oral argument did not occur on February 5. In any event, as set forth below, the trial court reached the correct result in denying both motions, and so "we find no prejudice under the circumstances." Finderne Heights Condo. Ass'n v. Rabinowitz, 390 N.J. Super. 154, 166 (App. Div. 2007); see Triffin v. Am. Intern. Grp., 372 N.J. Super. 517, 524 (App. Div. 2004).

We next address defendants' Appeal No. 4030-15, appealing the April 7, 2016 denial of the motion for reconsideration of the February 5, 2016 order. "[T]he decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). "Reconsideration should be used only where '1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.'" Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). "Thus, a trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Ibid. (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).

Defendants' March 9, 2016 motion sought reconsideration of "the denial of defendants['] motion for a stay" in the February 5, 2016 order. Defendants had to meet a "'particularly heavy' burden" to obtain a stay. Guaman v. Velez, 421 N.J. Super. 239, 247 (App. Div. 2011) (citation omitted).

> A successful applicant must demonstrate by clear and convincing evidence that a stay is necessary to prevent irreparable harm, that

> the legal right underlying the claim is settled, that the material facts are substantially undisputed, that the applicant has a reasonable probability of success on the merits, and that a balancing of the equities and the hardships weighs in favor of granting relief.
>
> [Id. at 247-48 (citing Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982) (citation omitted)).]

Defendant cannot show irreparable harm. "Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages." Crowe, 90 N.J. at 132-33. Thus, "claims for injunctive relief cannot normally be maintained where monetary damages are a sufficient remedy." Med. Soc'y of N.J. v. AmeriHealth HMO, 376 N.J. Super. 48, 62 (App. Div. 2005). "[E]quity will leave the parties to a remedy at law if money damages will adequately compensate for the wrong." Bd. of Educ. v. N.J. Educ. Asso., 53 N.J. 29, 43 (1968). As the trial court found, any error in the payment of $81,483.92 to plaintiff, which had already occurred when defendant made this motion, could be remedied by the payment of monetary damages.

On appeal, defendants instead argue the trial court improperly failed to hold a plenary hearing before issuing the November 4, 2015 order. However, defendants did not seek timely reconsideration of that order. See R. 4:45-2. In any event, as set forth above, defendants' argument is meritless.

Defendants' reconsideration motion attached a certification of defendants' current counsel relating events of which he had no personal knowledge, and certifications by Cornelius and Versey Martin stating current counsel's certification was "true to the best of my knowledge and belief." Thus, none of the certifications were legally competent under Rule 1:6-6. Estate of Kennedy v. Rosenblatt, 447 N.J. Super. 444, 456 (App. Div. 2016); Claypotch v. Heller, Inc., 360 N.J. Super. 472, 488-89 (App. Div. 2003). Moreover, counsel's certification made factual allegations which would have been "known to [defendants] prior to the entry of the order and [thus] were not an appropriate basis for reconsideration." Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010). In any event, counsel's argumentative certification did not show that any of the trial court's orders were founded "'upon a palpably incorrect or irrational basis.'" Pitney Bowes Bank, Inc., 440 N.J. Super. at 382 (quoting D'Atria, 242 N.J. Super. at 401).

Defendants have not shown the trial court's denial of reconsideration was a clear abuse of discretion. Defendants' remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13                                        A-1471-15T3