918 A.2d 7

R.M., PLAINTIFF–APPELLANT, v. SUPREME COURT OF NEW JERSEY, DISTRICT XIII ETHICS COMMITTEE AND OFFICE OF ATTORNEY ETHICS, DEFENDANTS–RESPONDENTS, AND JANE DOE, DEFENDANT.

Argued January 17, 2007—Decided March 26, 2007.

4

*Richard M. Gutman,* argued the cause for appellant (*Richard Gutman, P.C.,* attorney).

*Patrick DeAlmeida,* Assistant Attorney General, argued the cause for respondents (*Stuart Rabner,* Attorney General of New Jersey, attorney).

Justice RIVERA–SOTO delivered the opinion of the Court.

In this appeal, we review the methodology to be applied in respect of applications for counsel fees and costs in those instances where fee-shifting is permitted. We reaffirm that when a motion for counsel fees and costs is properly presented, the trial court must exercise its discretion within careful confines to determine the "lodestar"—that is, the number of hours reasonably expended multiplied by a reasonable hourly rate—and then determine whether any adjustments to the product are required.

## I.

Plaintiff R.M. filed an action challenging certain provisions of *Rule* 1:20–9, which mandated that a grievance filed against an attorney remain confidential until a formal complaint is filed. According to R.M., those provisions violated the federal Civil Rights Act, 42 *U.S.C.* § 1983, because they infringed on the free speech guarantees of both the United States and New Jersey Constitutions. *U.S. Const.* amend. I; *N.J. Const.* art. I, ¶ 6. While cross-motions for summary judgment were pending before the trial court, but before those motions were argued or decided, we directly certified the action pursuant to *Rule* 2:12–1, to address whether *Rule* 1:20–9 was unconstitutional. We referred the issue to our Professional Responsibility Rules Committee (PRRC).

Based on its review, the PRRC recommended that *Rule* 1:20–9 be amended to lift the veil of confidentiality from dismissed complaints and agreements in lieu of discipline, but that the provisions of the *Rule* providing for the confidentiality of investigations until a formal complaint is filed be retained.

In *R.M. v. Supreme Court*, 185 *N.J.* 208, 883 *A*.2d 369 (2005), we sustained plaintiff R.M.'s constitutional challenge, holding that, "as written and as applied, *Rule* 1:20–9 violates the First Amendment because it is not narrowly tailored to serve a compelling interest." *Id.* at 211, 883 *A*.2d 369. We held that "a grievant may discuss publicly the fact that he or she filed a grievance, the content of that grievance, and the result of the process." *Ibid.* We applied that ruling to "all grievances [then] being processed by the disciplinary system" while we retained "[t]he confidentiality of concluded matters[.]" *Ibid.* As a result, R.M. was the "prevailing party" in that action.

Invoking the fee-shifting provisions of 42 *U.S.C.* § 1988(b), R.M. applied for her counsel fees and costs. She sought fees and costs before the trial court and, separately, in respect of the proceedings before this Court. Before the trial court, R.M. initially certified that her counsel had worked 130.8 hours on "activities regarding this lawsuit in the Superior Court of Mercer County[,]"[1] and requested an hourly rate of $394. According to plaintiff, that rate was reasonable because it was "the mean of the hourly rates for partners in New Jersey law firms surveyed by the New Jersey Law Journal." Thus, plaintiff asserts, she was entitled to $51,535.20 (130.8 hours × $394/hour) for the work performed before the Superior Court.

---

[1] In broad strokes, R.M.'s counsel certified that he had expended approximately twenty hours in research, twenty hours in e-mail communications, seventy hours in drafting the summary judgment brief and related materials, and an additional twenty hours on other parts of the case, including drafting the initial complaint, matters related to counsel fees issues, and assorted meetings and telephone calls.

Plaintiff's application for fees and costs before this Court followed a like pattern. She claimed that her counsel had expended 166.57 hours drafting briefs, planning for oral argument, and overall preparing the matter for presentation. R.M. again claimed that a reasonable hourly rate for her lawyer's services was $394. She, therefore, sought $65,629 in counsel fees (166.57 hours × $394/hour), plus $193.12 in costs, for a total of $65,822.12.

In the aggregate, then, for the investigation, research, and filing of a complaint in the Law Division, the preparation and filing of summary judgment briefs and collateral material in the Law Division, the preparation and filing of briefs before this Court, and the presentation of argument before this Court, R.M. claimed that her counsel expended a total of 297.37 hours of work, for which she sought a total of $117,357.32 in counsel fees and costs. Plaintiff at no time sought an enhancement of her claimed counsel fees.

The Attorney General, representing the defendants in the matter, opposed plaintiff's requests before both the Law Division and this Court. The Law Division stayed its consideration of R.M.'s motion for counsel fees and costs while this Court addressed plaintiff's similar motion for counsel fees and costs for work done in the Supreme Court. In respect of the application for fees and costs before this Court, the Attorney General asserted that plaintiff's claimed $394 hourly rate was "unreasonable" and labeled as "excessive" the 166.57 in hours worked claimed by plaintiff. The Attorney General argued that the maximum to which plaintiff was entitled was 100 hours of work at an hourly rate of $250, or $25,000 in fees. The Attorney General did not dispute R.M.'s claim for $193.12 in costs. By an order dated May 9, 2006, this Court granted R.M.'s motion and awarded her "counsel fees and costs for work done in the Supreme Court ... limited to $25,194.00, inclusive of fees and costs."

R.M. returned to the Law Division and pressed her stayed motion for counsel fees and costs. There, too, the Attorney General had earlier asserted that R.M.'s request was unreasonable because the hours of attorney work claimed by plaintiff were

excessive and the hourly rate claimed by R.M.'s lawyer was inflated. As a result, the Attorney General recommended that the trial court award plaintiff a total of $18,750, representing a total of 75 hours worked at an hourly rate of $250. However, after this Court entered its counsel fees and costs award, plaintiff amended her application before the trial court to increase the number of hours claimed by nine and to seek costs.[2] In sum, R.M. sought a revised total of $55,157.94, consisting of $55,081.20 in fees (139.8 hours × $394/hour) plus $76.74 in costs for the work done before the Law Division, without any claim for fee enhancement.

The Attorney General once again asserted that both the number of hours claimed and the suggested hourly rate were unreasonable and excessive. Adopting a more detailed approach, the Attorney General further explained that the vast majority of the hours plaintiff asserted represented work before the Law Division were duplicative of the hours presented in R.M.'s application for fees before this Court, and that the remainder merely "create[d] a foundation for ... the Supreme Court brief that plaintiff's counsel ... submitted." On June 23, 2006, the trial court heard argument on plaintiff's application for $55,157.94 in counsel fees and costs, and reserved decision. Later that same day, the trial court issued an order awarding plaintiff a total of $19,726 for the work done before the Law Division.[3] Neither that order, nor an amended order simply adding that the trial court had entertained oral argument on the application, nor the transcript of that argument discloses the trial court's reasoning.[4]

---

[2] Although R.M. deducted 4.8 hours from her earlier fee request because those hours admittedly were not related to this case, she added 13.8 hours allegedly expended in evaluating the opposition to her original fee application. As a result, the net number of hours she claimed increased to 139.8.

[3] That order incorrectly identified the amount sought by plaintiff as $51,535.20, the amount of fees plaintiff initially sought before she amended her application.

[4] However, the amount awarded by the trial court bears the same proportionate relationship to the amount originally sought by plaintiff in the Law Division

Plaintiff appealed and, on our own motion, we again directly certified the matter.

## II.

In her principal submission to this Court, plaintiff asserts several errors in respect of the trial court's award. According to R.M., the trial court failed to apply the "lodestar" analysis required; the percentage reduction of her fees before this Court did not mandate a like reduction before the trial court; the trial court erred in considering the underlying merits of R.M.'s claim; and the trial court also erred when it considered the public interest nature of counsel's practice as a factor in determining the appropriateness of the fee award.

The Attorney General acknowledges that the award issued by the trial court is procedurally deficient and should be vacated because it failed to apply the required "lodestar" analysis. Having made that concession, however, the Attorney General asserts that no remand is required for three reasons. First, it is claimed that all of the information required to make an award is already in the record before this Court. Second, the Attorney General presses that this Court's earlier award fully compensated plaintiff's counsel and, hence, no additional award is necessary. And, finally, the Attorney General argues that, should this Court determine that additional fees are appropriate, the amount of the award should be reduced by the application of the "lodestar" methodology: a reasonable hourly rate applied to a reasonable number of hours.

In reply, R.M. asserts that, because defendants did not cross-appeal from the Law Division's order, the Attorney General failed to preserve its arguments attacking the quantum of the trial court's award. Plaintiff also claims that the Attorney General is barred from asserting that no award is necessary because defen-

---

($19,726/$51,535.20 or 38 percent) as the amount awarded by this Court bears to the amount sought by plaintiff in this Court ($25,000/$65,629 or, again, 38 percent).

dants adopted a different position before the trial court. Plaintiff further suggests that there are several material misstatements or omissions in the Attorney General's submissions.

## III.

### A.

R.M. filed her claim under 42 *U.S.C.* § 1983, a provision of the Civil Rights Act, 42 *U.S.C.* §§ 1981 to 2000h–6. The Civil Rights Act specifically authorizes the award of counsel fees and costs to a prevailing party under Section 1983. 42 *U.S.C.* § 1988(b) ("In any action or proceeding to enforce a provision of [certain sections of the Civil Rights Act, including Section 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"). As a matter of policy, the scope of counsel fees recoverable under the Civil Rights Act is purposefully broad. That is intentionally so in order "to ensure effective access to the judicial process for persons with civil rights claims, and to encourage litigation to enforce the provisions of the civil rights acts and constitutional civil rights provisions." *Hernandez v. Kalinowski,* 146 *F.*3d 196, 199 (3d Cir.1998). For that reason, "under [Section 1988], fees for preparing a motion requesting costs and fees, or 'fees on fees,' are recoverable." *Ibid.* (citations omitted); *see also Hensley v. Eckerhart,* 461 *U.S.* 424, 433 n. 7, 103 *S.Ct.* 1933, 1939 n. 7, 76 *L.Ed.*2d 40, 50 n. 7 (1983) (explaining that "Congress intended that 'the standards for awarding fees [under Section 1988] be generally the same as under the fee provisions of the 1964 Civil Rights Act.'" (quoting *S.Rep.* No. 94–1011, at 4 (1976), U.S.Code Cong. & Admin.News 1976, p. 5912)).

The manner in which a reasonable counsel fee is to be determined is well-settled. As a threshold matter, "[a] plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988." *Hensley, supra,* 461 *U.S.* at 433, 103 *S.Ct.* at 1939, 76 *L.Ed.*2d at 50 (footnote omitted). "[P]laintiffs may be considered

'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Ibid.* (citation, quotation marks and footnote omitted). Once it is determined that the plaintiff is a "prevailing party," a two-factor computation determines the "lodestar", that is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Ibid.* This calculation is critical because it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Ibid.*

Thus, determining the "lodestar" requires two separate inquiries: whether the number of hours of work claimed is reasonable, and whether the hourly rate sought is reasonable. The standard for determining whether the number of hours of work claimed is reasonable has been phrased in equitable tones: "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* at 434, 103 *S.Ct.* at 1940, 76 *L.Ed.*2d at 51 (quoting *Copeland v. Marshall,* 641 *F.*2d 880, 891 (D.C.Cir.1980)). Similarly, the reasonableness of the hourly rate sought "is to be calculated according to the prevailing market rates in the relevant community[,]" *Rode v. Dellarciprete,* 892 *F.*2d 1177, 1183 (3d Cir.1990) (citing *Blum v. Stenson,* 465 *U.S.* 886, 895, 104 *S.Ct.* 1541, 1547, 79 *L.Ed.*2d 891, 900 (1984)), a standard that also incorporates equitable considerations. Finally, in order to account for the delay inherent in most litigation, the hourly rate should be based either "on current rates or by adjusting the fee based on historical rates to reflect its present value." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 483 *U.S.* 711, 716, 107 *S.Ct.* 3078, 3082, 97 *L.Ed.*2d 585, 592 (1987).

Once a reasonable number of hours worked and a reasonable hourly rate have been defined, a simple arithmetic calculation multiplying one by the other determines the "lodestar." Ascertaining the "lodestar," however, does not end the inquiry. Because the determination to award counsel fees and, if so, in

what amount, is entrusted to the awarding court's exercise of discretion, *City of Riverside v. Rivera*, 477 *U.S.* 561, 572–73, 106 *S.Ct.* 2686, 2693, 91 *L.Ed.*2d 466, 478–79 (1986), the amount of the "lodestar" may be reduced or enhanced. *Hensley, supra*, 461 *U.S.* at 434, 103 *S.Ct.* at 1940, 76 *L.Ed.*2d at 51 ("The product of reasonable hours times reasonable rate does not end the inquiry. There remain other considerations that may lead the ... court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" (footnote omitted)).

The analysis required in respect of an award of counsel fees under Section 1988 [5] generally is governed by twelve factors:

(1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases.

[*Trimper v. City of Norfolk*, 58 *F.*3d 68, 73 (4th Cir.), *cert. denied*, 516 *U.S.* 997, 116 *S.Ct.* 535, 133 *L.Ed.*2d 440 (1995) (citing and adopting factors from *Johnson v. Ga. Highway Express*, 488 *F.*2d 714 (5th Cir.1974)).]

In determining counsel fees, "[s]ubjective factors may be used to increase or decrease the total amount awarded." *Fluhr v. Roberts*, 463 *F.Supp.* 745, 749 (D.Ky.1979) (citing *Johnson, supra*, 488 *F.*2d 714).

Ultimately, however, the reasonableness of counsel fees applications under either State law or Section 1988 is governed by the *Rules of Professional Conduct.* *Compare R.P.C.* 1.5(a) (listing factors in determining reasonableness of counsel fees), and *Rule* 4:42–9(b) (requiring applications for allowance of fees to address

---

[5] The provisions of Section 1988 allowing the recovery of counsel fees specifically apply in an action, such as this one, claiming a violation of the First Amendment. *Universal Amusement Co., Inc. v. Vance*, 587 *F.*2d 159, 172 (5th Cir.1978), *aff'd*, 445 *U.S.* 308, 100 *S.Ct.* 1156, 63 *L.Ed.*2d 413, *reh'g denied*, 446 *U.S.* 947, 100 *S.Ct.* 2177, 64 *L.Ed.*2d 804 (1980).

factors listed in *R.P.C.* 1.5(a)), *with Muscare v. Quinn,* 614 *F.*2d 577, 579 (7th Cir.1980), and *King v. Greenblatt,* 560 *F.*2d 1024, 1027 n. 6 (1st Cir.1977), *cert. denied,* 438 *U.S.* 916, 98 *S.Ct.* 3146, 57 *L.Ed.*2d 1161 (1978).

We turn, then, to an application of those standards to R.M.'s motion for counsel fees and costs before the trial court.

### B.

Plaintiff's counsel has certified that, in the truncated proceedings before the trial court—consisting of the filing of a complaint and the filing of and opposition to cross-motions for summary judgment—he expended a total of 139.8 hours and that an hourly rate of $394 is reasonable.[6] The Attorney General opposed plaintiff's request, principally noting that plaintiff already received an award of counsel fees and costs for the work done before this Court and that much, if not all, of plaintiff's claim in respect of the work done in the trial court is duplicative of the work for which R.M. already was compensated or is simply excessive.

 Because it is fundamental to the fairness of the proceedings and serves as a necessary predicate to meaningful review, in a parallel context we have stressed that "a trial court must analyze the [relevant] factors in determining an award of reasonable counsel fees and then must state its reasons on the record for awarding a particular fee." *Furst v. Einstein Moomjy, Inc.,* 182 *N.J.* 1, 21, 860 *A.*2d 435 (2004) (citing *Rule* 1:7–4(a) (requiring trial court to "find the facts and state its conclusions of law thereon in all actions tried without a jury")). In this instance, however, the trial court did not explain how or why it arrived at the amount of counsel fees it awarded. We therefore cannot ascertain with confidence whether the trial court applied the long-standing "lodestar" methodology for the determination of counsel

---

[6] By way of comparison, he certified that, in the proceedings before this Court, he expended a total of 166.57 hours drafting briefs, planning for oral argument, and preparing the matter for presentation.

fee awards. For that reason, we vacate the trial court's order awarding R.M. counsel fees and costs in the amount of $19,726. Based on the materials submitted and given the limitations within which an appellate court must operate, we are ill-suited to accept the Attorney General's suggestion that the record in this matter is complete and, hence, a remand is not needed to determine whether and to what extent R.M. is entitled to an award of counsel fees. Instead, we remand this case to the Assignment Judge of the Mercer Vicinage as a more suitable forum for the disposition of plaintiff's counsel fees claim in accordance with the principles to which we have referred.

On remand, the Assignment Judge is tasked to determine the lodestar for the work done by plaintiff's counsel in four venues: (1) work performed in the Law Division before this Court granted direct certification in this matter; (2) work done in prosecuting her counsel fees application in the Law Division; (3) work done in prosecuting the appeal of the counsel fees award from the Law Division to this Court; and (4) work done before the Assignment Judge on remand. The number of hours claimed to have been worked must be carefully scrutinized so that no duplication or overlap exists between the work for which plaintiff already received a counsel fees award from this Court and the work for which plaintiff now seeks an additional counsel fees award. Next, the hourly rate sought by plaintiff must be reasonably defined, taking into account any additional submissions plaintiff may make—submissions that were absent from plaintiff's earlier applications for counsel fees—and any rebuttal proffered. Finally, because plaintiff has not sought any enhancement and has strictly relied on an application of claimed hours worked times a claimed hourly rate, the Assignment Judge need not address or determine whether an enhancement is appropriate.

## IV.

The order of the Law Division awarding plaintiff counsel fees and costs in the amount of $19,726 is vacated and the case is

remanded to the Assignment Judge of the Mercer Vicinage for further proceedings consistent with this opinion.

*For vacation and remandment*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.